IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP., <br><br> Plaintiff, <br><br> v. <br><br> KIEWIT WESTERN CO., <br><br> Defendant. | No. 04 C 2389 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

A fire destroyed a wooden timber rail bridge in Riverdale, Illinois. As a result, Northeast Illinois Regional Commuter Railroad Corp. d/b/a Metra/Metropolitan Rail ["Metra"] sues Kiewit Western Co. for negligence (Count I), breach of contract (Count II), indemnification (Count III), strict liability (Count IV), and failure to procure insurance (Count V). Kiewit counterclaims against Metra for breach of contract (Count I), *quantum meruit* (Count II), and estoppel (Count III). Metra moves for summary judgment on Kiewit's amended counterclaims. Kiewit moves for partial summary judgment on Counts II and IV of Metra's first amended complaint.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other

1

supporting materials relied upon." Local Rule 56.1(b)(3)(A). All material facts set forth in the movant's statement are deemed admitted unless controverted by the opposing party's statement. Local Rule 56.1(b)(3)(B); *Fisher v. Ameritech*, 2002 U.S. Dist. LEXIS 15643, at *11 (N.D. Ill. Aug. 22, 2002). The court decides a summary judgment motion on the factual record outlined in the Local Rule 56.1 statements. *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004). Evidentiary materials attached to a response brief are disregarded unless they are cited in the factual record outlined in the Local Rule 56.1 statements. *Id.*

Both parties submitted Local Rule 56.1 statements in support of their motions ("Metra Facts" and "Kiewit Facts"). Kiewit responded to Metra's statement ("Kiewit Resp. Facts") and submitted a statement of additional undisputed facts ("Kiewit Add. Facts"). Metra failed to respond to Kiewit's statement. Accordingly, the court accepts as true any relevant and properly supported facts set forth in Kiewit's Facts. Metra attached deposition transcripts and other exhibits to its response brief. The attached materials and references to them must be disregarded because they are not part of the factual record outlined in the Local Rule 56.1 statements.[1] *See Koszola*, 385 F.3d at 1109.

## II. Facts

The following facts are undisputed unless otherwise noted. Metra is the commuter rail division of the Regional Transportation Authority. Kiewit is a Delaware corporation in the construction and engineering business. Metra and Kiewit entered a written contract dated August

---

[1] Both parties' purported facts contain inappropriate legal conclusions. *See, e.g.*, Metra Facts ¶ 4 ("Kiewit bears the risk of loss regardless of what entity caused the fire"); ¶ 5 ("Kiewit had the risk of loss of the work including any damages sustained from any loss whatsoever"); Kiewit Facts ¶¶ 16-24 (purporting to define contract terms).

22, 2002 for the reconstruction of a rail bridge in Riverdale, Illinois. The contract defined Kiewit as the "Contractor." Metra Facts, Ex. B. The contract described the scope of work:

> Contractor shall, as an independent contractor and not as an agent of METRA provide all permits, labor, tools, equipment, insurance, transportation, and facilities, etc. necessary for Reconstruction of Riverdale Bridge 17-1 Metra Electric District in Riverdale, Illinois, in accordance with plans and specifications prepared by Alfred Benesch & Co.

*Id.* at ¶ 1.0. The plans and specifications are not part of the summary judgment record.

Kiewit assumed the risk of loss to its work prior to Metra's final acceptance of the work. More specifically, ¶ 7 of the contract's general provisions provides:

> B. [a]ny damage caused by the Contractor's performance of this Contract to structures, utilities, facilities, or property shall be promptly repaired or restored to its original condition by the Contractor at its own expense irrespective of fault, unless instructed to the contrary by Metra.
>
> C. Metra shall assume the risk of loss of the work and materials only upon Final Acceptance. Prior to Final Acceptance, the Contractor shall have risk of loss of the work, including any damages sustained from any cause whatsoever.

*Id.* at ¶ 7(B), (C). The contract contains a separate indemnification clause that requires Kiewit to:

> indemnify, defend and save harmless Metra . . . from and against all loss, liability, cost, and expense . . . which any of them may incur, sustain or be subject to on account of all claims, including injury or death to persons. . . which result from or arise out of the performance of this Contract by Contractor. . . . This indemnification is not intended to violate the provisions of 740 ILCS 35/0.01 et seq., . . . nor is it intended to be an indemnification of Metra's own negligence or the negligence of Metra's employees.

*Id.* at ¶ 18.

On June 22, 2003, a fire engulfed and completely destroyed the Riverdale bridge. Metra Facts, ¶¶ 1, 5; Kiewit Ans. ¶ 7. The fire occurred before Metra accepted Kiewit's work under the contract. Kiewit Resp. Facts ¶ 5. During the 24-hour period before the fire, both Metra and Kiewit

3

personnel engaged in "hot-work" activities. Kiewit Facts ¶ 7. Kiewit performed torch cutting and welding. Torch cutting refers to the use of an oxyacetylene torch to cut metal. *See* Metra Resp., Ex. B at 62; Kiewit Facts, Ex. E at 11. Meta performed CAD welding. *Id.* at ¶¶ 7-11, 27. The parties dispute whose negligence caused the fire. Kiewit Ans. ¶ 12, Ninth Affirmative Defense. According to Metra's expert, the fire was caused at least in part by Kiewit's failure to take appropriate precautions during its hot work. Kiewit Facts ¶ 29. Metra's CAD welding involved sparks, flames or smoke. Kiewit Facts ¶ 9. Metra personnel continued welding on June 22 after Kiewit personnel completed their welding and torch cutting activities. *Id.* at ¶ 11. Metra had welding and torch cutting activities performed on its bridges prior to June 22, 2003. It is highly unusual for fires to occur on Metra bridges. *Id.* at ¶ 31.

As a result of the fire, Kiewit performed post-fire emergency work. Kiewit removed the fire damaged material, fabricated and installed a new temporary bridge, and removed those parts of the temporary bridge that were not to be used in the finished structure. Kiewit Resp. Facts ¶ 6. The parties did not enter a written contract covering Kiewit's post-fire emergency work. *Id.*

Following the fire, Vaughn Stoner, Metra's chief operating officer, instructed Kiewit to move forward with the post-fire work. *Id.* at ¶ 7. Stoner told Harry Koenigs, Kiewit's area manager, to "spare no expense" in completing the post-fire work. Kiewit Add. Facts ¶ 9. Steve Sumner, Metra's structural engineer, told Koenigs in more than one progress meeting after the fire that Kiewit would be paid for post-fire work. Metra Facts ¶ 10. Sumner instructed him how to submit Kiewit's costs for payment. *Id.*; Kiewit Add. Facts ¶ 16. Sumner told Koenigs that Kiewit would be paid for the work "as soon as [Metra's] legal people look at it and approve it." Metra Facts ¶ 7; Kiewit Add. Facts ¶ 13. Koenigs knew Sumner did not have authority to bind Metra to a contract, but he believed

4

Sumner had obtained approval from someone with authority to bind Metra. Metra Facts ¶ 7. Sumner had communicated with Koenigs regarding other aspects of the bridge reconstruction project both before and after the fire. Kiewit Add. Facts ¶ 17. Metra Executive Director, Phil Pagano, visited the bridge reconstruction site within days of the fire and stated Kiewit was doing "a great job" on the post-fire work. Kiewit Add. Facts ¶ 18. Koenigs discussed the final bill with Metra employees Bill Tupper and Joe Lorenzini. Lorenzini told Koenigs the cost "seemed pretty reasonable." *Id.* at ¶ 11. On June 27, 2003, Kiewit sent a letter to Metra advising it of the anticipated final cost of post-fire repair work. *Id.* at ¶ 19.

Kiewit submitted a $2.6 million invoice to Metra for post-fire emergency work. Metra Ans. Am. Counterclaim ¶ 11. Metra refuses to pay the invoice. *Id.* at ¶ 12. Metra claims Kiewit is responsible for assuming all losses incurred as a result of the fire under the terms of the contract. Am. Compl. ¶ 22 (Count II). Metra also claims Kiewit is strictly liable for all fire damages because the fire was caused by Kiewit's ultra hazardous activities. Am. Compl. ¶ 30 (Count IV). Kiewit claims Metra breached an oral agreement to pay $2.6 million for post-fire emergency work. Am. Counterclaim ¶ 13 (Count I). Kiewit further claims Metra is liable for the post-fire work under *quantum meruit* and estoppel principles. Am. Counterclaim (Counts II and III).

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). A party seeking summary judgment

bears the initial responsibility of informing the court of the basis for its motion, and identifying evidence that demonstrates the absence of a genuine issue of material fact. The non-moving party must then come forward with evidence and designate specific facts that establish there is a genuine triable issue. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). A genuine issue of material fact exists when the evidence would support a reasonable jury verdict for the non-moving party. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Analysis

### A. Metra's Motion for Summary Judgment on Amended Counterclaim

Kiewit asserts counterclaims for breach of oral contract (Count I), *quantum meruit* (Count II), and estoppel (Count III) arising out of Metra's failure to pay for post-fire emergency work. Metra moves for summary judgment on all three counterclaims. It argues all three counterclaims are barred by the assumption of loss provision in the contract. It also argues there is no evidence the parties entered an oral contract for post-fire work.

#### 1. Summary Judgment on Counts I, II and III

Metra argues all three counterclaims are barred by the contract's assumption of risk provision. Paragraph 7(C) states:

> Metra shall assume the risk of loss of the work and materials only upon Final Acceptance. Prior to Final Acceptance, the Contractor shall have risk of loss of the work, including any damages sustained from any cause whatsoever.

Metra Facts, Ex. 2. It is undisputed that the fire destroyed the bridge prior to Metra's final acceptance of Kiewit's work. Metra argues Kiewit should bear the entire cost of post-fire work regardless of the fire's cause. Kiewit responds that ¶ 7(C) is void as against public policy.

6

There is no dispute the contract is subject to the Illinois Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1 ("the Act"). The Act provides:

> [w]ith respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a . . . structure . . . or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

*Id.* According to Kiewit, the assumption of risk provision in ¶ 7(C) violates the Act because it operates to hold Metra harmless for losses resulting from its own negligence. Neither party cites authority addressing whether the Act bars an assumption of risk provision like ¶7(C).

In order to evaluate the parties' arguments, the court considers basic tenets of contract law and the purpose of the Act. A contract should not be deemed illegal unless it is expressly contrary to law or public policy. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill.2d 201, 215, 676 N.E.2d 1295, 1303 (1997). Illinois law and public policy permit and require freedom of contract between competent parties. *Id.* Whether a contract is contrary to public policy depends on the peculiar facts and circumstances of each case as applied to the contract's language. 175 Ill.2d at 215-6, 676 N.E.2d at 1303.

The Illinois Supreme Court has considered the purpose of the Act:

> It is generally known that indemnity and hold-harmless agreements are most widely used in the construction industry . . . . The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions.

*Id., citing, Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494, 498-99, 336 N.E.2d 881 (1975). As a matter of public policy, Illinois courts do not enforce promises to indemnify or hold a party

7

harmless for its own negligence because indemnity would provide disincentive for the indemnitee to exercise due care. *Id.*

Metra claims the assumption of loss provision is not an indemnification clause prohibited by the Act. Metra points out that the contract contains a separate indemnification clause that requires Kiewit to:

> indemnify, defend and save harmless Metra . . . from and against all loss, liability, cost, and expense . . . which any of them may incur, sustain or be subject to on account of all claims, including injury or death to persons. . . which result from or arise out of the performance of this Contract by Contractor. . . . This indemnification is not intended to violate the provisions of 740 ILCS 35/0.01 et seq., . . . nor is it intended to be an indemnification of Metra's own negligence or the negligence of Metra's employees.

*Id.* at ¶ 18. According to Metra, the fact that the contract contains a separate indemnification provision compling with the Act demonstrates that ¶ 7(C) is not an indemnification provision that violates the Act.

Metra is correct. Paragraph ¶ 7(C) must be construed in light of the contract language as a whole. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1038 (7th Cir. 1998) (applying Illinois law). Additionally, the contract must be construed in a manner that renders it enforceable rather than void. *Braye*, 175 Ill. 2d at 217; 676 N.E.2d at 1303. When ¶ 7(C) is read together with ¶18, the contract is enforceable under the Act: Kiewit assumed the risk of loss prior to Metra's final acceptance, but did not agree to hold Metra harmless for losses resulting from Metra's own negligence. To construe ¶ 7(C) as exculpating Metra from liability for losses resulting from its own negligence would run afoul of the Act. The Act explicitly prohibits "every covenant, promise or agreement to . . . hold harmless another person from that person's own negligence. . . ." 740 ILCS 35/1.

This construction of ¶ 7(C) furthers the underlying purpose of the Act: ensuring that parties with control over construction work have a continuing incentive, derived from their potential liability for negligence, to exercise due care. *Illinois Power Co. v. Duke Engineering & Services, Inc.*, 2002 U.S. Dist. LEXIS 5497, at **11-12 (N.D. Ill. March 29, 2002). The Act voids agreements that reduce the incentive to avoid construction-related injuries. *Id.* at * 14. Thus, the critical question is whether enforcing the contractual provision would reduce the incentive to avoid dangers associated with construction work. *Id.* at *17.

It is undisputed both Kiewit and Metra performed construction work on the bridge during the course of the reconstruction project. It is further undisputed both Kiewit and Metra performed hot work at the construction site on the day of the fire. Enforcing a contractual provision that purported to exculpate Metra from liability arising from its own negligence at the construction site would reduce Metra's incentive to avoid dangers associated with its work. If ¶ 7(C) is construed to exculpate Metra, it would be unenforceable under the Act. Accordingly, the court does not construe ¶ 7(C) to exculpate Metra from liability for losses resulting from its own negligence. There are factual issues whether Metra's or Kiewit's negligence caused the fire. Summary judgment is unwarranted on the amended counterclaims because ¶ 7(C) does not violate the Act.

2.   **Summary Judgment on Count I**

Kiewit alleges Metra breached an oral contract to pay for post-fire emergency work. Metra argues the purported oral agreement is too indefinite to be enforceable. More specifically, Metra argues there is no evidence the parties reached a meeting of the minds on price, an essential term. Kiewit counters with evidence that Metra's chief operating officer told Kiewit to "spare no expense" in completing the post-fire emergency work. Kiewit Resp. Facts ¶ 9. Kiewit argues this evidence

creates a "genuine issue of material fact whether price was discussed between Metra and Kiewit." Response at 5. The issue is not whether the parties discussed price, but rather whether they reached an agreement on price. *Cebulak v. Cwerenz*, 46 Ill. App. 3d 376-7, 361 N.E.2d 4, 5 (1st Dist. 1977) (directed verdict granted in breach of contract action where parties discussed price but did not reach a meeting of the minds on price).

A binding and enforceable oral contract does not arise unless the material terms of the alleged agreement are sufficiently definite and certain. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29, 578 N.E.2d 981, 983 (1991); *Abrams v. Illinois College of Podiatric Medicine*, 77 Ill. App. 3d 471, 476, 395 N.E.2d 1061, 1064-5 (1st Dist. 1979). A contract is sufficiently definite and certain to be enforceable if the court is able to ascertain what the parties have agreed to do. *Academy Chicago Publishers*, 144 Ill. 2d at 29; 578 N.E.2d at 983. The reason for this rule is obvious. A court cannot enforce a contract unless it can determine its material terms. *Abrams*, 77 Ill. App. 3d at 476, 395 N.E.2d at 1065. Price is generally an essential term of a common law contract. *Respect, Inc. v. Committee on the Status of Women*, 781 F. Supp. 1358, 1364 (N.D. Ill. 1992). Whether the terms of an alleged contract are sufficiently definite and certain is a question of law. *Razden v. General Motors Corp.*, 1999 U.S. Dist. LEXIS 11160, at * 6 (N.D. Ill. July 13, 1999) (applying Illinois law).

Viewed in the light most favorable to Kiewit, the evidence shows that Metra asked Kiewit to perform post-fire emergency work, Kiewit performed the work, a Metra employee told Kiewit to "spare no expense" and that the estimated cost "seemed pretty reasonable." Kiewit Resp. Facts ¶¶ 7, 9, 11; Response at 5. This evidence does not show the parties had a meeting of the minds with respect to price. Indeed, the court is unable to determine from this evidence what price Metra agreed

to pay for the post-fire work. Metra's statements with respect to price are too vague and indefinite to create a binding and enforceable oral contract. *See Abrams*, 77 Ill. App. 3d at 476, 395 N.E.2d at 1065. Accordingly, Metra's summary judgment motion on Count I must be granted.

### B. Kiewit's Motion for Partial Summary Judgment on First Amended Complaint

#### 1. Count II: Breach of Contract

Metra alleges Kiewit breached several provisions of the contract. Kiewit moves for partial summary judgment on Count II insofar as it alleges a breach of ¶7(C). As an initial matter, Kiewit's motion must be denied because it does not seek to dispose of the entire breach of contract claim. A motion for partial summary judgment is only proper if it seeks to dispose of an entire count or claim. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir. 1959); *Fidelity National Title Ins. Co. v. Intercounty National Title Ins. Co.*, 2002 U.S. Dist. LEXIS 16002, at **38-39 (N.D. Ill. July 3, 2002)(Conlon, J.); *Taylor v. Bekins Van Lines*, 1996 U.S. Dist. LEXIS 218, at **15-16 (N.D. Ill. Jan. 10, 1996)(Conlon, J.). Kiewit's motion addresses only one of the claimed breaches and does not seek disposal of Count II in its entirety. Accordingly, Kiewit's motion must be denied. *See Fidelity*, 2002 U.S. Dist. LEXIS 16002, at *39; *Konig v. Estronics, Inc.*, 1988 U.S. Dist. LEXIS 7869, at *4 (N.D. Ill. July 25, 1988)(Conlon, J.).

The court may nevertheless adjudicate the issue raised in Kiewit's motion under Fed.R.Civ.P. 56(d) if to do so would be helpful to the progress of the litigation. Kiewit advances two arguments in support of its motion. First, it argues ¶ 7(C) is void under the Illinois Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1. The court rejects this argument for the reasons set forth above.

Second, Kiewit argues ¶ 7 (C) only covers the loss of its own work, not all Metra's losses from the fire. Kiewit contends all Metra's alleged damages are outside the scope of ¶ 7 (C). Metra seeks damages for the complete destruction of the Riverdale bridge, costs incurred for post-fire repair, clean-up and erection of a temporary structure, additional costs to complete the construction project, loss of business and customer good will, and other incidental and consequential damages. Am. Complaint ¶ 9. Because Kiewit has not moved for summary judgment with respect to all other alleged contractual breaches in Count II, the court need not decide whether each and every claimed loss is covered by ¶ 7(C). Nor can the court determine as a matter of law whether Metra suffered any damages as a result of Kiewit's alleged failure to assume the loss of its own work. Kiewit's partial summary judgment motion must be denied.

### 2. Count IV: Strict Liability for Ultra Hazardous Activity

Metra alleges Kiewit's performance of ultra hazardous activities (welding and torch cutting) caused the fire, thereby subjecting Kiewit to strict liability. Kiewit argues the work it performed is not ultra hazardous as a matter of law. A defendant who performs an abnormally dangerous or ultra hazardous activity is subject to strict liability for damages resulting from the activity. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 208, 680 N.E.2d 265, 279 (1997). The liability arises out of the abnormal danger of the activity itself and the risk of harm it creates to those in the vicinity. *Id.* Illinois courts have traditionally used the terms "ultra hazardous," "abnormally dangerous," or "inherently dangerous" to refer to danger that is inherent in the instrumentality itself at all times, and not danger that arises from the negligent use of the instrumentality. *Id.* at 209, 680 N.E.2d at 279-80. Whether an activity is ultra hazardous is a question of law for the court to decide. *Id.* at 210, 680 N.E.2d at 280.

The Restatement (Second) of Torts § 520 sets forth several factors to consider when deciding whether an activity is ultra hazardous: (a) existence of a high degree of risk of some harm to the person or land; (b) likelihood resulting harm will be great; (c); inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances, that imposition of strict liability is justified, even though the activity is carried on with all reasonable care. *In re Chicago Flood Litigation*, 176 Ill. 2d at 210, 680 N.E.2d at 280.

Kiewit relies on *Woodward v. Mettille*, 81 Ill. App. 3d 168, 400 N.E.2d 934 (3rd Dist. 1980). In *Woodward*, plaintiff sought to impute an independent contractor's negligence to the property owner. Normally, a property owner is not liable for injuries caused by the negligence of an independent contractor. *Id.* at 175-6, 400 N.E.2d at 941-2. However, a property owner may be liable when the independent contractor is engaged in an inherently dangerous activity. *Id.* Plaintiff argued the independent contractor was engaged in an inherently dangerous activity when he used a cutting torch inside the property owner's building. *Id.* After considering how other courts defined inherently dangerous, the court concluded:

> [t]he use of a cutting torch is an activity which, if carried on properly and by competent and careful operators, is not in itself inherently dangerous. It does not pose the risk and danger to others or others' property when properly conducted as does the use of explosives, corrosives or other similarly inherently dangerous activities and products. That this is so is underlined by plaintiffs' entire argument that the risk to their properties arose not simply because of the use of the cutting torch, but rather, and more to the point, because of the careless manner in which it was operated and because of the nature of the premises within which it was operated. . . . Under the circumstances, the circuit court did not err in concluding

that, as a matter of law, the plaintiffs were not entitled to recover on their inherently-dangerous-activity theory.

*Id.* at 176-7, 400 N.E.2d at 943.

Metra fails to cite any contrary legal authority. Instead, it attempts to distinguish *Woodward* because that plaintiff alleged the independent contractor negligently used the cutting torch. According to Metra, it pleads the strict liability claim in the alternative and, does not allege Kiewit's negligent use of the hot work equipment contributed to the fire. But Metra cannot escape its own expert's opinion that Kiewit's failure to take appropriate precautions during the hot work led to the fire. Kiewit Facts ¶ 29. Metra's attempt to distinguish *Woodward* is unconvincing.

Neither party cites any other legal authority that addresses whether welding and torch cutting are ultra hazardous activities for purposes of imposing strict liability.[2] The court's own research revealed several cases from other jurisdictions that followed *Woodward*. *See, e.g., Luther v. Wayne Frier Home Center of Tifton, Inc.*, 592 S.E.2d 470, 472 (Ga. App. 2003);*Matomco Oil Co. v. Arctic Mechanical, Inc.*, 796 P.2d 1336, 1341-42 (Ala. 1990) ("We further conclude that the welding, buffing, or grinding of a petroleum tanker, in contrast to petroleum tanker transport, is not an ultrahazardous activity"); *Valley Electric, Inc. v. Doughty*, 528 P.2d 927, 928 (Co. App. 1974) ("We agree that welding with an oxygen-acetylene cutting torch presents some hazards. . . . However, we are not convinced that its use is an inherently dangerous activity which imposes liability upon the user without proof of negligence"). The court finds the *Woodward* line of cases convincing. While

---

[2]Kiewit cites *Huber v. Seaton*, 186 Ill. App. 3d 503, 542 N.E.2d 464 (2nd Dist. 1989). *Huber* involved a claim against a property owner for negligently hiring an independent contractor. In considering the negligent hiring claim, the court stated in *dicta* that "[c]ertainly, the use of a torch is not an inherently dangerous activity requiring that special precautions be taken with regard to its use." *Id.* at 509, 542 N.E.2d at 468, *citing, Woodward*, 81 Ill. App. 3d at 176-77.

welding and torch cutting present some hazards, there is no evidence they are ultra hazardous activities in and of themselves as defined under Illinois law. Summary judgment must be granted for Kiewit on Count IV of the first amended complaint.

## CONCLUSION

Metra's motion for summary judgment on the amended counterclaims is granted on Count I and denied on Counts II and III. Kiewit's motion for partial summary judgment is granted on Count IV of the first amended complaint and denied on Count II.

April 18, 2005

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge